Thank you. Good morning, judges, counsel. I'm here today arguing on behalf of Kirbesha Bailey from her conviction for a conspiracy to distribute a controlled substance. Kirbesha was not part of any drug conspiracy, and the government failed to meet its burden of proof on that. Although evidence must be considered in the light most favorable to government and jury verdicts aren't lightly overturned, the government is not entitled to inferences based on conjecture and speculation for a jury verdict to stand, and that's what we Overall, the district court's denial of a motion for judgment of acquittal, and I believe that's what should be done here today as well. This court has stated in several instances, such as in United States v. Schaffner, that mere presence is insufficient to establish membership in a conspiracy. In United States v. Roark, that knowledge of a drug deal and How do you summarize the evidence that was adduced? Okay. Thank you. There were three, there's basically three items that the government argued at trial and in its brief to support this conviction. First off, that Kirbesha mailed the package from Las Vegas. Second, that someone used an IP address associated with her Cox Communication account to track a package. Who was the package mailed to? The package that was, which package? The one that was tracked? She just said she mailed from Las Vegas. The package that she mailed from Las Vegas was, I believe that one was mailed to an Edward Martin. And the third one, the payments? Two payments. Right. Two payments that Kirbesha received from Edward Martin. Isn't there one more piece of evidence that is related to one of the things you mentioned, which is she mailed a package to Martin, I think within very close proximity of when Martin paid James. Am I wrong about that? I believe that's correct, that there was a payment to James around the time that she mailed the package. However, when you look at the case of United States versus Fitz, and then you compare what this court stated in that case for overruling the denial of Rule 29 motion, and you compare that to Kirbesha's case, I believe it shows that even though she may have mailed that package, that does not mean that she joined in any conspiracy. For instance, in Fitz, one of the things that this court stated was that there was no evidence in the record to indicate Fitz knew there were drugs in a secret compartment in the vehicle's gas tank. Well, in this case... Was Fitz one of the cases where the person that was stopped did not even speak English? Yes, I believe Fitz did not speak English. Right. So there was just nothing from... It's a roadside case? I believe Fitz was pulled over in a parking lot, but yes, basically a roadside case. Yes. But the point is, there was just no evidence that the person had done anything, right? Correct. Correct. And I think if you look and you compare Kirbesha with that case, you can see that the similarities, and in fact, in Fitz there was more than I believe there was in Kirbesha's case. Let me ask you one more thing. My understanding is that she also tracked packages that were later confirmed to contain methamphetamine on her phone. Is that part of the record here too? There is nothing in the record to show that Kirbesha tracked any packages. There was no testimony at all to show that Kirbesha tracked any packages. But it's her account that tracked them for sure, right? Right. An IP address associated with an account, with her Cox Communications account. However, there were four adults living in the apartment. And Agent George, the lead case agent, Agent George, testified that he could not tell you which one of those four adults tracked the package. Agent Nobles testified that he could not tell you which one of those adults tracked the package. It was purely speculation because the Cox Communications account is in Kirbesha's name or was in Kirbesha's name, and she's the one who paid the bill. It was purely speculation and conjecture, and that is not sufficient to uphold a conviction. The government Does the record reflect if it's a password-protected account? I don't believe there was a password on it. My recollection is that there was no password on it. What does the record show? I don't. My recollection is that there was no password protection on it. And that everybody in that apartment had access to the Wi-Fi. In this case with Kirbesha What do you think could be the reasonable inference that a jury could make from the payments that were being transferred? Well, Your Honor, the payments were child support. What the government in their brief, what the government doesn't really want to focus on is that Kirbesha was watching Ed Martin's child. The child's mother, the baby's mother, was in jail in Las Vegas, and instead of letting the child go into state custody, Kirbesha says, I'll watch him. So yes, she received money on a couple of occasions from Edward Martin, but it's child support. I think anyone who has children would agree that a baby is expensive. Diapers, wipes, formula, baby food, clothing, all the necessities of life. College, go ahead. All the necessities of life. Did he make regular, was there any evidence that he made regular payments to her, or were these just sort of, were they different amounts that came at different times? There were two payments of different amounts to Kirbesha, and then there were other payments to James, who was Kirbesha's boyfriend, live-in boyfriend at the time, and who also I believe was Ed Martin's cousin. So there were different payments that went to him as well during this time period. But these are payments, the payments that Kirbesha was receiving were payments for taking care of Edward's child. The reason why I ask that is because oftentimes child support payments are on a regular schedule and they're for much the same amount, and it sounds like these payments don't fit into that category. Well, oftentimes the child support payments are set by a court and are court ordered. These were not set by a court. There was never any legal proceeding to set the child support payments. These are just helping out to take care of his child. This is not legal child support, you're arguing. This is payments for babysitting. I guess you could say that they are payments for babysitting while the mother was in jail. But it's not legal child support? No, there was no court ordered child support or anything of that nature. Was there anything in the record to connect the quantity of the payments to the alleged quantities in the transactions or in the packages? I believe one of the agents did attempt to testify as to alleged quantities in the package. However, if you get back to the package that Kirbesha actually mailed, there's two things about that package. First, no one can tell you what was actually in that package. There was no evidence at all what was in that package. The lead case agent, Agent George, couldn't testify what was in the package. Postal Inspector Bradner couldn't testify what was in that package. The second thing about that is there was no evidence to show that Kirbesha knew what was in that package. And that goes back, I believe, to the Fitz case where there was no evidence in the record to show that Fitz knew there were drugs in the secret compartment in the vehicle's gas tank. There's nothing in the record to show that Kirbesha knew what was in that package or what was actually in that package. Mr. Anker, you've just about used your time. Would you like to reserve? Yes, if I could reserve the remaining time for rebuttal. Thank you. Mr. Kelderman? While it's fresh on my mind, would you address the same question about any connection between the amount transferred and the supposed value of anything received, or why it could be considered reasonably to be compensation of some kind? The only evidence that it was anything to do with the child at all was when Christopher James testified, and he said that there was, that they were taking care of his... I don't know what the evidence is connecting it to the package. Your Honors, the money that Ms. Bailey received showed up on days just before packages were sent. One of them was September 1, 2019, and she received $400 on that date. I thought she got the $400 on August, in August and the $700 in September. Are my notes wrong? Maybe my notes are wrong. It doesn't matter. Back to the Chief's main question, is there any connection between $400 and $700 and how much was or could have been what the evidence show in the packages? You know, a quantity sort of deal. Well, the package that showed up after the one that she mailed, it was the photo of her in Exhibit 52. That package showed up, and actually we have testimony from Special Agent B.J. George in the transcript at page 430. He testified that he watched that package be delivered by the United States Postal Service to Sarah Skinner's residence. He watched the package arrive. He sent in his CI. Thomas Gamage was his CI. He had a recording device and he actually had a key fob with a camera in it. He set it down on the table. Edward Martin comes out, brings the meth. Thomas Gamage was a daring CI, I guess is a good way to put it. He conducted what he called a science experiment to test the purity of the package. I believe he testified at one point that there were six ounces of methamphetamine on that table right in front of the camera. He thought that there were 12 ounces total that he left with, and I believe it actually turned out to be eight ounces that he purchased. And so this is within a short amount of time of this package landing in Rapid City. B.J. George watches it be delivered. They send in the CI, and the CI buys methamphetamine  How much was it worth? How much was it worth? Well, Special Agent Nobles talked about in Las Vegas you could buy a pound of methamphetamine for, I believe he said $1,600 to $2,000, but the retail price in Rapid City is significantly higher. Gamage was paying $5,400 for a half a pound at times, so I don't think that there's a set price necessarily, but you can get a lot more meth in Las Vegas for a much lower amount of money. So what is the connection in this case in the value of what she was given and the value of what she is alleged to have conspired to? What happened, and this was shown again with Gamage, he was on recordings talking to Ed Martin was also on the phone with Christopher James. And what happened was they would piecemeal payments to Las Vegas. And so, well, you're going to have a pound coming. Well, you still owe me $700. That pound doesn't leave Las Vegas until the last $700 comes in or the last $400. So you see a number of payments with regard to the July 27 package, August 28, September 7, and the December package where there are a number of payments that are made. Exhibits 19 and 20 show only two payments to Kirbysha Bailey. The money goes to Las Vegas to Christopher James, to Kirbysha Bailey, to her father Kirby Bailey, and a little quickly it accumulated, a package leaves Las Vegas. And we have the tracking for four packages, the ones that I just listed. Those things were accumulated or collected later by subpoena or by getting the information from Walmart or from the United States Postal Service when the postal inspector got involved. So we didn't have, at that moment, we didn't know who was sending it at the time when it was sent, but they were able to go back and look at the postal records in Las Vegas and watch her sending it or watch other people in the residence who were located in the James and Bailey residence in January when they were arrested. As far as the tracking goes, exhibits 18 and 18B as well as 18A, they were all records for Cox Communications for Ms. Bailey. They showed the IP addresses that were assigned to her account on particular dates. Exhibit 18, 18 shows this 8801, I'm sorry, 2600 colon 8801, that's just the shorthand that I used for it. That was her IP address and that IP number, her IP address tracked the package that arrived in December. December was the packaging to conclusively determine who was using the IP address. In her interview, Ms. Bailey said she is the only one that has access to her Wi-Fi. There was no computer in the residence. She said there was no computer in the residence. She said that she was the only one who had the password for her Wi-Fi. She was the only one that used it. Special Agent Nobles... And is that in the record at trial? It is absolutely in the record at trial. Special Agent Nobles... The word password is in the trial. I will find it while I'm saying the next part here, Your Honor. Special Agent Nobles went so far as to ask her, so it's your phone and yours alone, and she said yes. And I will try to find the word password here. Is it in your brief? I believe it is, Your Honor. Okay. Proceed. I didn't recall. How did they know that it was her phone? Was it the IP address associated with the phone or was there some sort of record showing like a search history? The phone also was collected at the time. I believe she admitted which phone was hers. If I remember correctly, but it was her account. It was her phone number that was listed on the account, and that was the phone that we're talking about. That's the phone that she was asked about as well. I'm trying to get at how do we know that that phone is the one that searched those packages? Searched the tracking of those packages. Is there anything that indicates that or am I making a logical mistake? She did not admit to the tracking part. We got the records and we found the IP addresses because these tracking records that come from the Postal Service, it shows all different phones, all different times where someone may have looked at that package. Or if it gets scanned in when it gets to a certain location, there's just a whole bunch of different things. Anything that was accessed by a computer on a package is listed. That's what I'm getting at. I'm getting at the fact that you have dynamic and you have static IP addresses. This is probably way too much, but the point is if she had dynamic, it could be that somebody else had that IP address when they were accessing some other device within the house. You probably would say, she said she's the only one that could access that. I'm just trying to figure out if we absolutely know the phone is the device that accessed it. I don't believe that we know absolutely that it was that phone, but we have through her omissions that she was the only one that used it. She's the only one that used the Wi-Fi. There was no computer in the house, no other evidence of that, and she said there was no computer in the house. What's the government's evidence that she knew what was in the package sent to Rapid City? A reasonable inference based on her tracking in August, her receiving money in August and September. Mailing it doesn't. What information does that give you about knowledge of what's in it? I'm saying it's a reasonable inference because it's meth transactions. She's mailing a package and the meth shows up just a few days later in Rapid City, and we purchased meth out of it. No direct evidence where she said, I knew there was methamphetamine in packages. It was not in the package. Sarah Skinner also had in her belongings, and it's just a short note that I have in my brief, she had, Sarah Skinner is a person in Rapid City involved in the conspiracy, no relationship to Las Vegas, other than she had Christopher James' and Fabricia Bailey's phone numbers on a card in materials that she was, that were found in her possession. Thank you, Mr. Kelderman. Thank you, Your Honors. Mr. Anker, we'll fill out your minute to provide a rebuttal. Thank you. Real quickly, just to address a couple of items, the Fabricia Bailey interview specifically where the government says that there was no computer, she was asked if she owned a computer. However, I believe it was a picture that was actually introduced at trial by the government that shows a laptop computer in the house or in the apartment. So did she own a computer? No, but somebody else in that house did. And again, there's nothing to show that she's the one that tracked out of the four adults that lived in that apartment. What about her admission? During the interview, the government says, well, she admitted that she was the only one who had access to that Wi-Fi network. I believe that there was a lot of confusion and misunderstanding going on during that interview. I mean, if you look at the interview in its entirety, she needed help spelling the word spike. She couldn't remember what day it was. She had just been woken early in the morning, placed in handcuffs and arrested in front of her, I believe, nine-year-old son at the time, and taken off and is now being questioned by law enforcement. There was a lot of confusion. Agent George admitted under oath on the stand that there was a lot of confusion during that interview. So her admitting that she's the only one that had Wi-Fi access, I would argue that that's part of the confusion because there's other testimony from the trial that others had access to the Wi-Fi as well. But, of course, a jury could reject that. A jury could say, well, she wasn't confused. She said what she said. I'm just trying to get at whether the evidence is sufficient. I understand. Yes, I understand. Yes, a jury could reject that. However, again, Mr. Kelderman in his argument here today stated that it's inference, that there's inferences that show that Kirbysha knew what was in that package. But, again, this Court in United States is entitled to inferences based on conjecture and speculation for a jury verdict to stand. So the speculation that are the inferences that Mr. Kelderman refers to is not enough for the verdict. Thank you, Mr. Anker. Thank you. The Court acknowledges your service.